**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 2 0 2012

JAMES N. HATTEN, Clerk

By L. Wade - Childs
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | (SUPERSEDING) |
| | : | |
| JOSEPH M. ELLES (1) | : | NO. 1:11-CR-445-JEC |
| JOSEPH PACIFICO (2) | : | |

THE GRAND JURY CHARGES THAT:

## COUNT ONE
### Securities Fraud
### (18 U.S.C. §§ 1348 and 2)

1. Beginning on a date unknown to the Grand Jury, but at least by in or about 2006, and continuing until in or about mid-2009, in the Northern District of Georgia and elsewhere, the defendant, JOSEPH M. ELLES, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully execute and attempt to execute a scheme and artifice (1) to defraud other persons, in connection with stock securities of Carter's, Inc., and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of stock securities of Carter's, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 ("The Exchange Act") (Title 15, United States Code, Section 78l), and that was required to file reports under Section 15(d) of The Exchange Act.

## BACKGROUND

2.    At all times relevant to this Indictment:

a.    Carter's, Inc. ("Carter's") was a public company registered in Delaware and headquartered in Atlanta, Georgia. Carter's common stock traded on the New York Stock Exchange under the stock ticker symbol, "CRI". Carter's securities were registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12(b) of the Exchange Act, and the Company was required to file reports with the SEC pursuant to Section 15(d) of the Exchange Act.

b.    As a public company, Carter's was required to comply with securities laws and rules and regulations issued by the SEC. Those laws, rules, and regulations generally were designed to protect members of the investing public and Carter's shareholders by ensuring the accuracy and integrity of the Carter's financial information that was disclosed to the public. Among other things, Carter's was required to and did periodically publish financial statements and other reports of its financial condition. Carter's was required to and did file an annual report (including audited financial statements) covering its entire fiscal year, which ran from January through December. Carter's was also required to and did file quarterly reports (including unaudited financial statements) every three months, for the quarters encompassing January through March (1st quarter), April through June (2nd

2

quarter), July through September (3rd quarter), and October through December (4th quarter).

   c. Carter's marketed clothing and apparel for babies and young children, selling primarily to department stores and retailers such as Kohl's, Babies "R" Us, Macy's, Sears, Target, and Wal-Mart. The executive offices of Carter's were located in Atlanta, Georgia.

   d. The defendant, JOSEPH M. ELLES, was employed as Executive Vice President of Sales for Carter's until in or about March 2009, working out of offices in Nevada, the corporate headquarters of Carter's in Atlanta, Georgia; and elsewhere. In this capacity, defendant JOSEPH M. ELLES served as the second-highest executive in the Carter's sales organization, supervising Carter's customer accounts through a team of vice presidents of sales ("sales VPs") and account executives assigned to manage each of those accounts, and reported directly to the President of the Company. Between in or about March 2009 and in or about June 2009, defendant JOSEPH M. ELLES continued to work for Carter's in order to assist with the transition of certain of his responsibilities to a successor employee.

   e. Kohl's Corporation ("Kohl's") was a public company headquartered in Menomonee Falls, Wisconsin. Kohl's was a department store chain which operated stores throughout the United States. Kohl's was Carter's most significant wholesale sales

3

customer in terms of volume of sales, and wholesale sales constituted a significant portion of Carter's business.

## ACCOMMODATIONS AND ACCOUNTING FOR ACCOMMODATIONS

f.   Carter's provided rebates in certain cases to wholesale customers (including Kohl's and other retail chains) generally referred to as "accommodations" or "margin support." These rebates were negotiated and paid at the end of particular selling seasons, in certain cases where the wholesale customer was not able to achieve an expected profit margin in selling Carter's goods.   For example, Carter's might have sold and delivered $100,000 worth of goods to a particular wholesale customer for a particular selling season, with the expectation that the wholesale customer might be able to make a certain profit in selling those goods in its retail stores (say, 35%).   If at the end of that selling season the wholesale customer achieved a lower profit margin in selling those goods (say, 30%), the customer and Carter's might negotiate for Carter's to help make up all or part of the difference, in the form of "margin support" rebates.   The decision as to whether to pay such rebates, and how much, is made in light of other discounts, promotions, market conditions, and other variables impacting the customer's sales of Carter's goods in that season.

g.   By their nature, these rebates are negotiated and paid after-the-fact, that is, weeks or months after the goods to

4

which the rebates relate have been sold and delivered by Carter's to the wholesale customer. For example, Carter's might sell and deliver $100,000 worth of goods to a wholesale customer in November of a particular year. After the selling season, in January of the following year, Carter's might agree to pay back a certain amount of that revenue to the customer in the form of margin support (for example, $10,000).

h.    The margin support payments are expenses that reduce Carter's profits. Using the above example, although Carter's initially received $100,000 from selling the goods, it ultimately had to return $10,000 in the form of a rebate, thereby reducing the net revenue for that sale to $90,000.

i.    To give an accurate picture of its financial results for any given period, it was important for Carter's to report not just the revenue from its sales during that period, but also the margin support expenses that Carter's later paid relating to those same sales. Using the above example, if Carter's received the $100,000 from selling goods in November of 2008, but rebated back $10,000 in January 2009, it would report a net sale of $90,000 in its financial statements pertaining to the fourth quarter of 2008 (which consisted of October - December 2008). In other words, Carter's would record the expense as relating to the quarter and year in which the original sale occurred and the revenue was received, and not when the rebate happened to later be paid.

5

j.    The defendant, JOSEPH M. ELLES, was the principal Carter's official who negotiated and agreed to accommodations payments with wholesale customers, particularly to Kohl's.

### DEFENDANT'S SCHEME

3.    The object of the scheme was for the defendant, JOSEPH M. ELLES, aided and abetted by others known and unknown to the Grand Jury, to use his position as Executive Vice President of Sales of Carter's, to hide and conceal millions of dollars in accommodations payments promised by defendant JOSEPH M. ELLES to Kohl's, Carter's largest wholesale customer, over a multi-year period, and to thereby report false sales profitability information to company auditors, directors, shareholders, and others, for purposes including to enrich himself through salary, bonuses, and Carter's stock and stock options.

4.    The defendant's scheme included the following:

a.    The defendant induced Kohl's to make substantial purchases of Carter's goods by assuring that if Kohl's did not achieve its desired profit margins, Carter's would make up the difference with margin support rebates.

b.    The defendant's promises to Kohl's in this regard and consistent ability to actually deliver margin support in the amounts promised induced Kohl's to purchase more goods than it might have otherwise purchased. This had the effect of increasing Carter's wholesale sales.

c. The defendant effectively hid millions of dollars in accommodations expenses that he was agreeing to pay to Kohl's from Carter's finance staff, audit committee, auditors, and others, for several periods. The defendant did this by regularly having Kohl's agree to defer taking the accommodations for 60 to 90 days, so that the expenses would falsely appear to relate to sales in future quarters. The defendant also caused falsified documents to be created and transmitted to Carter's finance staff, which misrepresented the timing of the sales to which accommodations related.

d. As part of the scheme, the defendant also personally executed false representation statements that were provided to and he knew would be relied on by Carter's management, board of directors, and auditors. The defendant on these forms falsely stated the amount of accommodations rebates that had been agreed to with Kohl's and other wholesale customers for particular periods.

e. As a result of the deferrals and the defendant's false statements relating to those deferred expenses, millions of dollars in accommodations expenses were regularly recorded by Carter's in the incorrect accounting period. For most of the years at issue and many of the quarters, the defendant's scheme resulted in a substantial understatement of Carter's accommodations expenses (and therefore an overstatement of Carter's profits). In other words, the scheme made Carter's reported results seem better than

they actually had been.  For example, the scheme caused Carter's to report income that was overstated by approximately 3% for 2005, over 5% for 2006, and over 20% for 2007.  During this three years Carter's financial statements failed to report over $16 million in accommodations expenses, because those expenses had been hidden and disguised as a result of the fraud.

f.   For one year, 2008, and the first fiscal quarter of 2009, the scheme resulted in a slight overstatement of accommodations expenses and therefore a slight understatement of Carter's profits.   In other words, the scheme made Carter's reported results seem slightly worse than they actually had been. For the second quarter of 2009 (April through July), the scheme caused Carter's to understate its net income by approximately 47%.

g.   On or about October 27, 2009, Carter's announced that it would delay its quarterly earnings release previously scheduled for that day in order to complete a review of its accounting for margin support to its wholesale customers.   The company's stock price fell over 20% that day.   On or about November 9, 2009, the company announced it had discovered the misconduct and that it would need to restate earnings.    The company's stock price fell approximately 9% by the close of trading the next day.  On or about January 15, 2010, Carter's issued its restated financial statements dating back to 2005.  The company's stock price fell over 2% that day.

All in violation of Title 18, United States Code, Sections 1348 and 2.

## COUNT TWO
### Securities Fraud
### (18 U.S.C. §§ 1348 and 2)

5.    The factual allegations set forth in Paragraphs One through Four of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

6.    Beginning on a date unknown to the Grand Jury, but at least by in or about April 2009, and continuing through in or about November 2009, in the Northern District of Georgia and elsewhere, the defendant, JOSEPH PACIFICO, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully execute and attempt to execute a scheme and artifice (1) to defraud other persons, in connection with stock securities of Carter's, Inc., and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of stock securities of Carter's, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 ("The Exchange Act") (Title 15, United States Code, Section 78l), and that was required to file reports under Section 15(d) of The Exchange Act.

## BACKGROUND

7.   At all times relevant to this Indictment:

a.    The defendant, JOSEPH PACIFICO, was employed as President of Carter's until in or about December 2009, working out of Carter's headquarters in Atlanta, Georgia.   In this capacity, defendant JOSEPH PACIFICO served as the highest-ranking executive in the Carter's sales organization, and as a senior executive officer of the Company.   In addition to supervising defendant JOSEPH M. ELLES (and his successors after defendant JOSEPH M. ELLES' separation from Carter's), the defendant, JOSEPH PACIFICO, was responsible for, among other things, marketing, sales, and sales-related functions, including the Company's wholesale sales accounts.

b.    In connection with his supervisory responsibility over Carter's wholesale sales accounts, the defendant, JOSEPH PACIFICO, approved accommodations commitments to wholesale customers, including Kohl's, and signed internal financial documents relating to such commitments.

## DEFENDANT'S SCHEME

8.   The object of the scheme was for the defendant, JOSEPH PACIFICO, aided and abetted by others known and unknown to the Grand Jury, to use his position as President of Carter's to hide and conceal millions of dollars in wholesale customer accommodations expenses of Carter's that had been deferred from

10

prior financial periods from Carter's shareholders, senior management, auditors, directors, and others.

9. The defendant's scheme included the following:

a. The defendant, JOSEPH PACIFICO, provided false, misleading, and incomplete information to, and made or caused false and misleading statements to be made to, Carter's shareholders, senior management, employees, directors, and auditors that misrepresented and concealed the existence of millions of dollars in accommodations expenses. For example:

1. On or about April 28, 2009, the defendant, JOSEPH PACIFICO, signed an internal memorandum to the Chief Financial Officer of Carter's in connection with the preparation of the Company's financial statements for the first quarter of 2009. The defendant, JOSEPH PACIFICO, knew that the memorandum falsely and fraudulently concealed millions of dollars in accommodations expenses that had been deferred from 2008 and that the Company had promised to allow Kohl's to deduct from Carter's during 2009, and that it misrepresented the terms and amounts of the Company's accommodations commitments to Kohl's.

2. On or about June 1, 2009, the defendant, JOSEPH PACIFICO, signed and approved internal Carter's forms that disguised millions of dollars in 2008 accommodations expenses as 2009 accommodations expenses. The defendant, JOSEPH PACIFICO, knew that the expenses related to sales made in prior financial periods

11

and that the false forms would cause the Company to account for the 2008 expenses in the wrong period and falsely report them as 2009 expenses in its financial statements to shareholders.

    3.   On or about September 28, 2009, the defendant, JOSEPH PACIFICO, made false and misleading statements to the Chief Executive Officer and the Chief Financial Officer of the Company about the existence of millions of dollars in undisclosed accommodations expenses.

    b.   When his subordinates discovered the undisclosed accommodations expenses and brought their concerns to his attention beginning in or about April 2009, the defendant, JOSEPH PACIFICO, took steps to prevent other members of senior management from discovering the undisclosed expenses, including by dissuading his subordinates from raising their concerns to senior management, affirmatively instructing them not to do so, and falsely informing his subordinates that he would do so when in truth and in fact he did not.

All in violation of Title 18, United States Code, Sections 1348 and 2.

### COUNTS THREE THROUGH NINE
#### Causing False SEC Filings
#### (15 U.S.C. §§ 78m(a), 78ff; 18 U.S.C. § 2)

    10.   The factual allegations set forth in Paragraphs One through Nine of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

11. On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth in Column A, in the Northern District of Georgia and elsewhere, the defendants identified in Column C, aided and abetted by others known and unknown to the Grand Jury, willfully and knowingly caused Carter's, Inc., an issuer with a class of securities registered under Section 12 of The Exchange Act (Title 15, United States Code, Section 78l), and that was required to file reports under Section 15(d) of The Exchange Act, to make statements in such reports, as identified in Column D, that were false and misleading with respect to material facts:

| A COUNT | B FILING DATE (On or About) | C DEFENDANT(S) | D SEC FILING |
|---------|------------------------------|-----------------|--------------|
| THREE | 11-9-06 | JOSEPH M. ELLES | Quarterly Report on Form 10-Q for the Third Quarter of 2006 (period ending 9-30-06) |
| FOUR | 2-28-07 | JOSEPH M. ELLES | Annual Report on Form 10-K for the Fiscal Year Ended 12-30-06 |
| FIVE | 5-10-07 | JOSEPH M. ELLES | Quarterly Report on Form 10-Q for the First Quarter of 2007 (period ending 3-31-07) |
| SIX | 10-29-07 | JOSEPH M. ELLES | Quarterly Report on Form 10-Q for the Third Quarter of 2007 (period ending 9-29-07) |

| A | B | C | D |
|---|---|---|---|
| COUNT | FILING DATE (On or About) | DEFENDANT(S) | SEC FILING |
| **SEVEN** | 2-27-08 | JOSEPH M. ELLES | Annual Report on Form 10-K for the Fiscal Year Ended 12-29-07 |
| **EIGHT** | 4-30-09 | JOSEPH M. ELLES JOSEPH PACIFICO | Quarterly Report on Form 10-Q for the First Quarter of 2009 (period ending 4-4-09) |
| **NINE** | 7-31-09 | JOSEPH M. ELLES JOSEPH PACIFICO | Quarterly Report on Form 10-Q for the Second Quarter of 2009 (period ending 7-4-09) |

All in violation of Title 15, United States Code, Sections 78m(a) and 78ff; and Title 18, United States Code, Section 2.

<u>COUNTS TEN THROUGH TWENTY-TWO</u>
**False Books and Records**
**(15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78ff; 18 U.S.C. § 2)**

12.   The factual allegations set forth in Paragraphs One through Nine of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

13.   On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth in Column A, in the Northern District of Georgia and elsewhere, the defendants identified in Column C, aided and abetted by others known and unknown to the Grand Jury, did knowingly and

14

wilfully falsify and cause to be falsified, books, records and accounts of Carter's, Inc., an issuer with a class of securities registered under Section 12 of The Exchange Act (Title 15, United States Code, Section 78l), and that was required to file reports under Section 15(d) of The Exchange Act, as set forth in Column D:

| A COUNT | B DATE (On or About) | C DEFENDANT(S) | D BOOK, RECORD, ACCOUNT |
|---|---|---|---|
| TEN | 2-19-07 | JOSEPH M. ELLES | Memorandum from Joseph Pacifico and Joseph Elles regarding customer accommodations commitments for 2006 |
| ELEVEN | 4-2-07 | JOSEPH M. ELLES | Internal Authorization Forms dated April 2, 2007 |
| TWELVE | 4-29-07 | JOSEPH M. ELLES | Internal Authorization Forms dated April 29, 2007 |
| THIRTEEN | 1-29-08 | JOSEPH M. ELLES | Memorandum from Joseph Pacifico and Joseph Elles regarding customer accommodations commitments for 2007 |
| FOURTEEN | 4-8-08 | JOSEPH M. ELLES | Internal Authorization Forms dated April 8, 2008 |
| FIFTEEN | 4-28-08 | JOSEPH M. ELLES | Internal Authorization Forms dated April 28, 2008 |
| SIXTEEN | 5-1-08 | JOSEPH M. ELLES | Internal Authorization Form dated May 1, 2008 |

| A<br><br>COUNT | B<br><br>DATE<br>(On or<br>About) | C<br><br>DEFENDANT(S) | D<br><br>BOOK, RECORD, ACCOUNT |
|---|---|---|---|
| SEVENTEEN | 5-20-08 | JOSEPH M. ELLES | Internal Authorization Forms dated May 20, 2008 |
| EIGHTEEN | 1-21-09 | JOSEPH M. ELLES | Memorandum from Joseph Pacifico and Joseph Elles regarding customer accommodations commitments for 2008 |
| NINETEEN | 2-23-09 | JOSEPH M. ELLES | Internal Authorization Forms dated February 23, 2009 |
| TWENTY | 4-6-09 | JOSEPH M. ELLES | Internal Authorization Forms dated April 6, 2009 |
| TWENTY-ONE | 4-28-09 | JOSEPH PACIFICO | Memorandum from Joseph Pacifico regarding customer accommodations commitments for 2009 |
| TWENTY-TWO | 6-1-09 | JOSEPH M. ELLES<br>JOSEPH PACIFICO | Internal Authorization Forms dated May 4 and May 5, 2009 |

All in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), and 78ff; and Title 18, United States Code, Section 2.

## COUNTS TWENTY-THREE THROUGH TWENTY-NINE
### Wire Fraud
### (18 U.S.C. §§ 1343 and 2)

14.  The  factual  allegations  set  forth  in  Paragraphs  One through  Four  of  this  Indictment  are  hereby  re-alleged  and incorporated by reference as if set forth in full herein.

15.  Beginning on a date unknown to the Grand Jury, but at least by in or about 2006, and continuing until in or about mid-2009,  in  the  Northern  District  of  Georgia  and  elsewhere,  the defendant, JOSEPH M. ELLES, aided and abetted by others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud Carter's and to obtain money and property from Carter's by means of materially false and fraudulent  pretenses  and  representations,  and  by  omission  of material facts, well knowing and having reason to know that said pretenses  and  representations  were  and  would  be  false  and fraudulent when made and caused to be made and that said omissions were and would be material.

### EXECUTION OF DEFENDANT'S SCHEME TO DEFRAUD

16.  On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth  in  Column  A,  in  the  Northern  District  of  Georgia  and elsewhere, the defendant, JOSEPH M. ELLES, aided and abetted by others known and unknown to the Grand Jury, for the purpose of executing the aforementioned scheme and artifice to defraud, and

attempting to do so, and for obtaining money and property from Carter's by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, did knowingly and willfully cause to be transmitted by means of wire and radio communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, that is, electronic communications, as described in Column C:

| A COUNT | B DATE (On or About) | C TRANSMISSION |
|---------|----------------------|----------------|
| TWENTY-THREE | 3-24-07 | E-mail from Kohl's to Joseph Elles regarding timing of accommodations |
| TWENTY-FOUR | 3-27-07 | E-mail from Kohl's to Joseph Elles regarding timing of accommodations |
| TWENTY-FIVE | 5-3-07 | Facsimile to Carter's Finance Department, Shelton, Connecticut, attaching April 19, 2007 and April 20, 2007 representation letters regarding Kohl's accommodations |
| TWENTY-SIX | 4-18-08 | E-mail from Patricia Wicks to Carter's Finance Department regarding Kohls' accommodations |
| TWENTY-SEVEN | 2-23-09 | E-mail from Patricia Wicks to Kohl's regarding data entry relating to accommodations |
| TWENTY-EIGHT | 2-23-09 | E-mail from Joseph Elles to Jon Ostenson and Patricia Wicks regarding data entry error by Kohl's relating to accommodations |
| TWENTY-NINE | 3-17-09 | E-mail from Patricia Wicks to Kohl's regarding data entry for accommodations |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNTS THIRTY THROUGH THIRTY-SEVEN</u>
Mail Fraud
(18 U.S.C. § 1341 and 2)

17.  The factual allegations set forth in Paragraphs One through Four of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

18.  Beginning on a date unknown to the Grand Jury, but at least by in or about 2006, and continuing until in or about mid-2009, in the Northern District of Georgia and elsewhere, the defendant, JOSEPH M. ELLES, aided and abetted by others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud Carter's and to obtain money and property from Carter's by means of materially false and fraudulent pretenses and representations, and by omission of material facts, well knowing and having reason to know that said pretenses and representations were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material.

**EXECUTION OF DEFENDANT'S SCHEME TO DEFRAUD**

19.  On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth in Column A, in the Northern District of Georgia and elsewhere, the defendant, JOSEPH M. ELLES, aided and abetted by

19

others known and unknown to the Grand Jury, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, and for obtaining money and property from Carter's by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, did knowingly cause the document identified in Column C, to be sent and delivered by the United States Postal Service and other private and interstate carrier according to the directions thereon:

| A<br><br>COUNT | B<br><br>DATE<br>(On or<br>About) | C<br><br>DOCUMENT |
|---|---|---|
| **THIRTY** | 4-12-07 | Internal Authorization Forms dated April 2, 2007 |
| **THIRTY-ONE** | 5-23-07 | Internal Authorization Forms dated April 29, 2007 |
| **THIRTY-TWO** | 4-16-08 | Internal Authorization Forms dated April 8, 2008 |
| **THIRTY-THREE** | 5-2-08 | Internal Authorization Forms dated April 28, 2008 |
| **THIRTY-FOUR** | 5-14-08 | Internal Authorization Form dated May 1, 2008 |
| **THIRTY-FIVE** | 7-10-08 | Internal Authorization Forms dated May 20, 2008 |
| **THIRTY-SIX** | 3-4-09 | Internal Authorization Forms dated February 23, 2009 |
| **THIRTY-SEVEN** | 4-27-09 | Internal Authorization Forms dated April 6, 2009 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE PROVISION

Upon conviction of one or more of the offenses alleged in Counts One through Thirty-Seven of this Indictment, the defendants,

JOSEPH M. ELLES and
JOSEPH PACIFICO,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

    (a)   cannot be located upon the exercise of due diligence;

    (b)   has been transferred or sold to, or deposited with, a third party;

    (c)   has been placed beyond the jurisdiction of the court;

    (d)   has been substantially diminished in value; or

    (e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

A _____ True _____ BILL

_____ FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

DAVID M. CHAIKEN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 118618

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000